[No. 6570.    Decided April 6, 1907.]

THE STATE OF WASHINGTON, *on the Relation of John D. Atkinson, as Attorney General, Respondent,* v. ERNEST E. EVANS, *Appellant.*[1]

ALIENS—RIGHT TO ACQUIRE REAL ESTATE—MINERAL LANDS—CONSTITUTIONAL LAW—CONSTRUCTION. An alien can acquire lands in this state containing deposits of limestone, silica, silicated rock and clay, to be used in good faith in the manufacture of cement, such deposits being "minerals" within the meaning of Const., art. 2, § 33, and not to be restricted by the words "metals, iron, coal or fire clay," following; since a construction must be adopted to give effect to every part of the clause and to give words their natural and ordinary meaning.

CONSTITUTIONAL LAW — RULES OF CONSTRUCTION. Contemporaneous construction of words and phrases used in the constitution should have great weight in their construction.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered October 20, 1906, in favor of the plaintiff, upon sustaining a demurrer to the affirmative defense, in an action to escheat certain lands purchased by an alien. Reversed.

*Campbell & Powell* and *Dorr & Hadley,* for appellant.

*The Attorney General* and *A. J. Falknor, Assistant,* for respondent.

MOUNT, J.—This action was brought against the appellant, to escheat to the state certain lands in Whatcom county, which lands were purchased by, and stood of record in the name of the appellant. A judgment was entered as prayed for, and this appeal followed. The complaint alleges, that the defendant was and is an alien and has not declared his intention to become a citizen of the United States; that

[1]Reported in 89 Pac. 565.

on May 4, 1906, the Western Estates Company, a corporation, made and delivered a deed of certain described lands to the defendant; that the said lands were not acquired by inheritance or under mortgage made in good faith in the ordinary course of the collection of debts, and that the lands do not contain valuable deposits of minerals, metals, iron, coal, or fire clay, nor are they necessary for mills or machinery to be used in the development thereof, or the manufacture of the products therefrom; that the defendant is claiming to be the owner of said lands. The defendant answered the complaint, admitting all the allegations above stated except the one, that the lands contained no valuable deposits of minerals, metals, iron, coal, or fire clay, etc., which was denied; and as an affirmative defense alleges that,

"The land described in the complaint as the north half of the northeast quarter of the northeast quarter of section 28, township 40, north, of range 5, E. W. M., contains valuable deposits of mineral, to wit, limestone; that the land described in the complaint as the northwest quarter of the northwest quarter of section 27, in said township and range, contains valuable deposits of minerals, to wit, silicated clay; that the land described in the complaint as beginning at the section corner common to sections 7, 8, 17 and 18, in said township and range, and running thence north along the line between sections 7 and 8, three hundred feet to a point; thence east six hundred and eighty feet; thence south three hundred feet; thence west six hundred and eighty feet to the place of beginning, situate in section 8 in said township and range, contains valuable deposits of minerals, to wit, silica, silicated rock and clay; that limestone, silica, silicated rock and clay are minerals necessary to be used in the manufacture of cement; that the defendant purchased said lands in good faith and without any design or intent to violate the constitution or statutes of the state of Washington touching the acquisition of lands by aliens, but on the contrary for the express and only purpose of extracting from said lands said limestone, silica, silicated rock and clay and manufacturing the same into cement, and defendant and his associates in good faith intend to, and are about to, extract said limestone, silica, silicated

rock and clay from said lands and manufacture the same into cement."

The lower court sustained a general demurrer to this affirmative defense. Defendant stood upon the allegations thereof, and a judgment was entered as prayed for.

The question in the case is, may an alien by purchase acquire lands in this state, which lands contain valuable deposits of limestone, silica, silicated rock, and clay, and the necessary lands for mills and machinery to be used in the development thereof and the manufacture of such deposits into cement? The answer to this question depends upon the construction of § 33 of article 2 of our constitution, which is as follows:

"The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage, or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly or in trust for such alien, shall be void: *Provided*, That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom. Every corporation, the majority of the capital stock of which is owned by aliens shall be considered an alien for the purposes of this prohibition."

There can be no doubt that the term "minerals" in its broad and comprehensive meaning includes limestone, silica, silicated rock and silicated clay—in fact, all matter which is not vegetable or animal. If the constitution had used the expression "valuable deposits of minerals" in the same connection, without the use of the words "metals, iron, coal or fire clay," then there could be no doubt of the intention of that provision to permit aliens to purchase lands containing valuable deposits of limestone, silica, or silicated clay, or any other mineral substances for which the land was chiefly valuable, for the purpose of manufacturing mineral products therefrom.

But it is argued by the respondent, plausibly indeed, that by the use of the words "metals, iron, coal, or fire clay," immediately following the general word "minerals," it is the intention of the constitution to restrict the meaning of that general word to the valuable mineral ores containing gold, silver, copper, lead, etc. But this argument is very much weakened, if not entirely destroyed, by the fact that the word "metals," as commonly used and understood and as used in this section of the constitution, includes all the precious metals named, and therefore the use of the general word "minerals" was superfluous; and if it was the intention to limit the general term "minerals" and "metals" to the specific substances iron, coal, or fire clay, then the words "minerals" and "metals" are both superfluous.

"The rule applicable here is, that *effect is to be given, if possible, to the whole instrument,* and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together. In interpreting clauses we must presume that *words have been employed in their natural and ordinary meaning.* As Marshall, Ch. J., says: 'The framers of the constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they said.' " Cooley, Constitutional Limitations (6th ed.), pp. 72, 73.

We must, therefore, conclude that each of the words "minerals," "metals," "iron," "coal," or "fire clay," was used for a purpose in its natural and ordinary meaning, leaving as little as possible to implication or interpretation, and that one word was not used necessarily to restrict or modify the meaning of another word, but was used to make definite the rights of aliens to acquire lands containing valuable deposits of minerals, whether metals or not, and any kind of metals whether iron or not, and any kind of iron, coal, or fire clay, where such lands are chiefly valuable for such minerals.

In the case of *Northern Pac. R. Co. v. Soderberg*, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575, the supreme court of the United States, in considering the meaning of the words "mineral lands," as used in the act of 1864 granting certain lands in aid of the railway company, said:

"The word 'mineral' is used in so many senses, dependent upon the context, that the ordinary definitions of the diction-. ary throw but little light upon its signification in a given case. Thus the scientific division of all matter into the animal, vegetable or mineral kingdom would be absurd as applied to a grant of lands, since all lands belong to the mineral kingdom, and therefore could not be excepted from the grant without being destructive of it. Upon the other hand, a definition which would confine it to the precious metals, gold and silver, would so limit its application as to destroy at once half the value of the exception. . . . Nor do we approximate much more closely to the meaning of the word by treating minerals as substances which are 'mined,' as distinguished from those which are 'quarried,' since many valuable deposits of gold, copper, iron and coal lie upon or near the surface of the earth, and some of the most valuable building stone, such, for instance, as the Caen stone, in France, is excavated from mines running far beneath the surface. This distinction between underground mines and open workings was expressly repudiated in *Midland R. Co. v. Haunchwood Co.*, L. R. 20 Ch. Div. 552, and in *Hext v. Gill*, L. R. 7 Ch. App. 699. . . . Conceding that in 1864 Congress may not have had a definite idea with respect to the scope of the word 'mineral,' it is clear that in 1884, when the line of this road

was definitely located, it had come to be understood as including all lands containing 'valuable mineral deposits,' as well as lands 'chiefly valuable for stone,' and that when the grant of 1864 first attached to particular lands by the definite location of the road in 1884, the railway found itself confronted with the fact that the word 'mineral' had by successive declarations of Congress been extended to include all valuable mineral deposits."

Contemporaneous construction of words and phrases used in the constitution has great weight in determining the meaning of such words. Cooley, Const. Lim. (6th ed.), p. 82. Our constitution was adopted in 1889, after Congress had given the word "minerals" the construction above indicated. The court in the case above cited, further considering the meaning of the word "minerals," said, at page 534:

"The rulings of the Land Department, to which we are to look for the contemporaneous construction of these statutes, have been subject to very little fluctuation, and almost uniformly, particularly of late years, have lent strong support to the theory of the patentee, that the words 'valuable mineral deposits' should be construed as including all lands chiefly valuable for other than agricultural purposes, and particularly as including non-metallic substances, among which are held to be alum, asphaltum, borax, guano, diamonds, gypsum, resin, marble, mica, slate, amber, petroleum, limestone, building stone, and coal. The cases are far too numerous for citation, and there is practically no conflict in them. The decisions of the state courts have also favored the same interpretation. Thus in *Gibson v. Tyson*, 5 Watts 34, chromate of iron was held to be included in reservation of all mineral. In *Hartwell v. Camman*, 10 N. J. Eq. 128, a grant of 'all mines, minerals, open or to be opened,' was held to include paint stone, on the ground that it was valuable for its mineral properties—the court distinctly repudiating the idea that the term should be confined to metals or metallic ores. In *Funk v. Haldeman*, 53 Pa. St. 229, and in *Gill v. Weston*, 110 Pa. St. 313, petroleum was held to be mineral, although the act authorizing the lease of mining lands was passed before petroleum was discovered. See, also, *Gird v. California Oil Company*, 60 Fed. Rep. 531. The same prin-

ciple was extended in *W. & C. Natural Gas Company v. DeWitt,* 130 Pa. St. 235, to natural gas, which was said to be a mineral *feroe naturoe.* In *Armstrong v. Lake Champlain Granite Company,* 147 N. Y. 495, a conveyance of 'all mineral, *and* ores,' was held to include granite subsequently discovered on the premises, though it would not pass under the name 'mineral ores.' In *Johnson v. Harrington,* 5 Washington 73, 78, the supreme court of that state thought it would hardly be disputed that stone was a mineral, though it seems inconsistent with the subsequent case, in the same volume, of *Wheeler v. Smith,* 5 Washington, 704, holding that the term mineral was only intended to embrace deposits of ore. The rulings of the English courts have, with a possible exception in some earlier cases, adopted the construction that valuable stone passed under the definition of minerals. . . . We do not deem it necessary to attempt an exact definition of the words 'mineral lands,' as used in the act of July 2, 1864. With our present light upon the subject in might be difficult to do so. It is sufficient to say that we see nothing in that act, or in the legislation of Congress up to the time this road was definitely located, which can be construed as putting a different definition upon these words from that generally accepted by the text writers upon the subject. Indeed, we are of opinion that this legislation consists with, rather than opposes, the overwhelming weight of authority to the effect that mineral lands include not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character which are useful in the arts or valuable for purposes of manufacture."

The reasoning and conclusion reached in that case are, in our opinion, unanswerable, and set at rest the question as to the natural and ordinary meaning of the words "minerals" and "valuable deposits of minerals," as used in our constitution. We have therefore quoted the argument at length from that opinion, and adopt it in this case.

Since it is admitted that the lands held by appellant contain valuable deposits of limestone, silica, silicated rock, and clay, and that the same were acquired and are held in good faith for the purpose of manufacturing those minerals into

cement, the appellant is within the constitutional provision and therefore authorized to hold the lands for that purpose.

We may say, in reference to the case of *Wheeler v. Smith,* 5 Wash. 704, 32 Pac. 784, that that case was one where this court was construing a statute of the United States, and because a different construction of the word "minerals" has since been reached by the supreme court of the United States in a similar statute, the decision in *Wheeler v. Smith, supra,* ceases to be an authority upon that question.

We are therefore of the opinion that the trial court erred in sustaining the demurrer to the affirmative answer. The cause is reversed and remanded for further proceedings consistent with this opinion.

HADLEY, C. J., ROOT, FULLERTON, CROW, and DUNBAR, JJ., concur.