[No. 1554-2. Division Two. April 16, 1976.]

WEYERHAEUSER COMPANY, *Appellant*, v. BURLINGTON NORTHERN, INC., *Respondent.*

*Barry J. Dahl* and *Helmut Wallenfels* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow*), for appellant.

*Woodrow L. Taylor* (*Roger J. Crosby* and *James W. Cook*, of counsel), for respondent.

PEARSON, J.—Weyerhaeuser Company, the successor to Weyerhaeuser Timber Company (Weyerhaeuser), appeals from a dismissal with prejudice of its action against Burlington Northern, Inc. (Railroad). The suit involved the construction of a deed of timberland in Cowlitz County from Railroad to Weyerhaeuser. The trial court, sitting without a jury, held against Weyerhaeuser's claim that Railroad had no interest in certain basaltic andesite rock situated on the land conveyed by that deed, and that Weyer-

haeuser was not entitled to damages for removal of the rock by Railroad.

The issue on appeal is whether the trial court correctly decided that the reservation of right to all "minerals" contained in the 1917 deed from Railroad's predecessor, the Northern Pacific Railway, was unambiguous so as to preclude admission of extrinsic evidence offered by Weyerhaeuser to interpret the disputed phrase.

The extrinsic evidence was in the form of exhibits Nos. 28 through 38, offered to establish the surrounding circumstances existing prior to execution of the deed. The exhibits include preliminary negotiations and Railroad's examination report, interoffice memoranda, and instructions; they are explained in the margin.[1] Weyerhaeuser argues that the

[1] In 1900, Railroad sold several hundred thousand acres of Western Washington timberlands to Frederick Weyerhaeuser without reservation. (Exhibit No. 28.) Railroad's land commissioner William Phipps then wrote a letter dated July 7, 1900, to Mr. Weyerhaeuser soliciting an offer to buy Railroad's remaining Western Washington timberlands, including the 640 acres of Section 15, Township 8 North, Range 3 East of Willamette Meridian, in Cowlitz County. (Exhibit No. 29.) On March 1, 1902, Weyerhaeuser offered to buy certain timberlands, including "Town 8—Range 3E," in fee simple without reservation, at a price of $6 per acre. (Exhibit No. 30.) On June 9, 1902, Phipps wrote a letter relating that Railroad's directors first rejected Weyerhaeuser's offer because of price and the request for no reservations, and that Railroad subsequently agreed upon Weyerhaeuser's price in exchange for Weyerhaeuser's acquiescence in a mineral reservation for Railroad. (Exhibit No. 31.) Exhibit No. 32 is a letter from Phipps dated July 29, 1902, in which his understanding of the agreement is contained: The sale was subject to the provision "That the coal and iron and other metallic ores underlying such tracts as are understood by the company's officers . . . to contain such metal in paying quantities, be reserved to the company." Exhibit No. 33 is an agreement dated November 16, 1904, and signed by both parties, which modified the price but provided that the "contract of March 2, 1902, shall [otherwise] remain in full force and effect."

Shortly thereafter, a Railroad employee named Plummer was instructed to give Weyerhaeuser copies of Railroad's examination reports on the affected lands. The instructions told Plummer that the sale was "conditional that the usual mineral reservation covering all minerals, be inserted . . . on all lands where the officers of the Railway Company believed it probable mineral in paying quantities existed . . . and you will . . . take up the question with Geologist

exhibits should have been admitted to aid the court in interpreting the following language in the 1917 deed, urged to be ambiguous:

> excepting and reserving unto [Railroad] its successors and assigns, forever, *all minerals of any nature whatsoever*, including coal, iron, natural gas and oil, upon or in said land . . .

(Italics ours.)

In 1960 Weyerhaeuser opened the disputed pit in Section 15, Township 8N, Range 3E to provide a source of rock for the vital purpose of constructing and maintaining logging roads. Plaintiff's testimony showed the basaltic andesite rock found therein to be common in the area, and valueless for anything but road building within 2 miles, beyond which it is more economical to dig another pit than to haul the rock from an existing pit.

In 1970 and 1971, Railroad—acting in the belief its reservation of the right to "minerals" in the deed gave it authority—took rock from the pit without seeking permission or paying compensation to Weyerhaeuser. This action for damages and declaratory relief followed.

---

Storrs, . . . . to advise you on which if any the mineral reservations should be made." (Exhibit No. 34.) Plummer then wrote a letter to Weyerhaeuser dated May 21, 1908, in which he stated that some lands (including Township 8N, Range 3E) "may be eliminated if found valuable for coal at any time before conveyance is made." (The lands had not yet actually been conveyed because they had not been patented by the United States government to Railroad.) This letter sparked Weyerhaeuser's immediate reply which, paraphrased, stated its assumption that Plummer meant that Railroad will "have the right to make coal and mineral reservations"—not that the lands containing coal would be omitted from the conveyance. (Both letters are in exhibit No. 35.) Exhibit No. 36, a "Statement of land still to be conveyed to Weyerhaeuser Timber Company under contract March 1, 1902," dated May 10, 1911, describes the subject parcel as "not yet examined."

Exhibit No. 38 contains Railroad's booklet of "Instructions for Examination of Timberlands in Western Washington," pursuant to which the disputed section was presumably examined, and in which examiners were told to "note . . . any indication of coal, iron, stone or other valuable deposits." Exhibit No. 37 is Railroad's 1913 examination report on Township 8N, Range 3E, and it mentions no "stone" or other "valuable deposits." It does, however, mention the presence of surface rock elsewhere in the report, under "Soil" heading.

The trial court, in granting Railroad's motion to dismiss after Weyerhaeuser had rested, adopted Railroad's position that the reservation unambiguously reserved to it the right to extract basaltic andesite as a "mineral." The court ruled that "minerals" broadly includes "everything not organic"[2] and excluded the proffered exhibits because it saw no ambiguity they could aid in resolving. Weyerhaeuser, however, contends the exhibits would have (1) refuted the court's conclusion that Weyerhaeuser had no real interest in anything but timber; and (2) buttressed its position that "minerals" was intended to mean major mineral resources such as the coal, iron, oil, and natural gas specifically mentioned in the deed, rather than common surface or subsurface rock.

We believe the trial court erred in its conclusion that Weyerhaeuser's proffered parol evidence was inadmissible to "vary or explain" the language of the reservation, and we reverse the order of dismissal.

■    The parol evidence rule is that where there is no ambiguity in an integrated agreement

all conversations, contemporaneous negotiations, and parol agreements between the parties prior to a written agreement are merged therein. In the absence of accident, fraud, or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments. . . .

The parol evidence rule is not a rule of evidence, but one of substantive law.

(Citations omitted.) *Fleetham v. Schneekloth*, 52 Wn.2d 176, 178-79, 324 P.2d 429 (1958).

As we commented in a previous case in some detail, some confusion has been engendered by Washington decisions concerning the proper application of the parol evidence rule in ascertaining the parties' intent in an agreement. *Eagle Ins. Co. v. Albright*, 3 Wn. App. 256, 474 P.2d 920 (1970). One common standard is the so-called "plain mean-

---

[2]This phrase was used in the oral ruling.

ing rule" sometimes referred to as the "mechanical" test, in which the court confines its view to the "four corners" of the agreement and, if the contract appears complete, no parol evidence is admissible to vary or contradict its terms. The other is the "context" or "intent" test, which allows parol evidence of the surrounding circumstances to show the intent of the parties. *See* Shattuck, *Contracts in Washington, 1937-1957: Part II*, 34 Wash. L. Rev. 345, 374-77 (1959).

As in *Eagle Ins. Co. v. Albright, supra*, it is unnecessary to our decision for us to choose between these tests. Our reading of the cases and authorities makes it apparent that the purpose of both tests is to attempt to discover *whether* the parties intended the written document to be an *integration* of their mutual agreement. Parol evidence is admitted for this purpose under the "intent" test. *Barber v. Rochester*, 52 Wn.2d 691, 328 P.2d 711 (1958); *Lynch v. Higley*, 8 Wn. App. 903, 510 P.2d 663 (1973);[3] *Diel v. Beekman*, 1 Wn. App. 874, 465 P.2d 212 (1970); 5 R. Meisenholder, Wash. Prac., *Evidence* § 121 (1965); 3 A. Corbin, *Contracts* § 573 (1960); *see Dix Steel Co. v. Miles Constr., Inc.*, 74 Wn.2d 114, 443 P.2d 532 (1968). Under the "mechanical" or "four corners" test, parol evidence of the parties' intent is inadmissible unless the written language is ambiguous on its face. *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 459 P.2d 947 (1969); *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954); *Brother Int'l Corp. v. National Vacuum & Sewing Mach. Stores, Inc.*, 9 Wn. App. 154, 510 P.2d 1162 (1973).

Regardless of which test is applied here, however, it is clear that the deed is a fully integrated document describing the acreage conveyed, reciting the price, and specifying other terms, including the reservation of mineral rights. Not only does the document appear complete on its face,

[3] *Lynch v. Higley*, 8 Wn. App. 903, 908, 510 P.2d 663 (1973) can be profitably read for a concise, scholarly analysis of the uses of parol evidence in this context.

the extrinsic evidence offered to the court confirms that the deed was intended to be the integration of the parties' agreement reached through years of negotiation for the sale of the timberland.

■ The real issue before us, then, is whether the disputed term "minerals" is ambiguous. If so, it is settled that the court can consider extrinsic documents concerning negotiations and actions of the parties which will illuminate their intended meaning of the term when the deed was executed. *Forrester v. Craddock*, 51 Wn.2d 315, 317 P.2d 1077 (1957); *Sons of Norway v. Boomer*, 10 Wn. App. 618, 519 P.2d 28 (1974); *Lynch v. Higley, supra; Eagle Ins. Co. v. Albright, supra;* L. Simpson, *Law of Contracts* § 101 (2d ed. 1965); 3 A. Corbin, *Contracts* § 579 (1960). This is not a question of applying parol evidence to "vary" an integrated writing, but a proper use of parol evidence to explain and interpret an ambiguous term. As stated by Professor Corbin,

> No parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means. The "parol evidence rule" is not, and does not purport to be, a rule of interpretation or a rule as to the admission of evidence for the purpose of interpretation. Even if a written document has been assented to as the complete and accurate integration of the terms of a contract, it must still be interpreted; and all those factors that are of assistance in this process may be proved by oral testimony.

(Footnote omitted.) 3 A. Corbin, *Contracts* § 579, at 412.

■ "A written instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning." *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970). Accordingly, it is apparent to us that "minerals" is at least ambiguous as to whether intended to include *all* inorganic material or simply valuable deposits such as "coal, iron, natural gas and oil." *Puget Mill Co. v. Duecy*, 1 Wn.2d 421, 96 P.2d 571

(1939).[4] Indeed, Weyerhaeuser has cited cases in which virtually identical reservations were held as a matter of law *not* to include sandstone or gravel. *E.g., Cumberland Mineral Co. v. United States,* 513 F.2d 1399 (Ct. Cl. 1975); *Bumpus v. United States,* 325 F.2d 264 (10th Cir. 1963). However, we will not at this point substitute a conclusion of law on the scope of the term "minerals" for that of the trial court. Its conclusion that the term includes basaltic andesite was based on a finding that the word is unambiguous. Since we have held that finding erroneous, the trial court should now have the opportunity to consider extrinsic evidence in determining whether its conclusion was also in error.

■ Upon remand, the trial court is directed to admit exhibits Nos. 28 through 38 as aids in interpreting the ambiguous term "minerals" in the deed. We believe these documents will assist in uncovering whether the parties truly intended that Railroad's reservation would cover the basaltic andesite rocks common to the locale. If the court is uncertain of the parties' intention after considering this evidence, it should then be guided by the rule that ambiguous language in a deed should be construed to resolve the doubt against the grantor. *Hodgins v. State,* 9 Wn. App. 486, 513 P.2d 304 (1973).

Reversed and remanded.

PETRIE, C.J., and REED, J., concur.

---

[4]One interpretation of *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 96 P.2d 571 (1939) is that the term "minerals" is ambiguous as a matter of law.