[No. 9389–1–III.   Division Three.   July 6, 1989.]

RAY H. KUNKEL, ET AL, *Respondents,* v. MERIDIAN OIL, INC., ET AL, *Appellants.*

*Dale Foreman, Thomas Janisch, Jardine, Foreman, Turner & Appel, David E. Wagoner,* and *Perkins Coie,* for appellants.

*Harrison Dano* and *Jill I. Lunn,* for respondents.

SHIELDS, J.—Ray and Lola Kunkel and their children, Sharon and Larry, filed a declaratory action to determine rights to oil and gas deposits on their property in light of a mineral reservation contained in their deed. The action was brought against Meridian Oil, Inc., the successor in interest to Northern Pacific Railway Company; and Delaware Coastal Oil & Gas Corporation and Elf Aquitaine, Inc., who both claim an interest in the land by virtue of an oil lease with Meridian.[1] The trial court held (1) the mineral reservation was not binding on the original purchaser; (2) the contract did not merge into the subsequently issued deed; and (3) even if the mineral reservation was binding, an interpretation of that reservation did not encompass gas and oil. We reverse.

In 1864, the United States Congress granted Northern Pacific Railway Company (Railroad) 40 million acres of land on the condition that it construct a railroad from Lake Superior to Puget Sound. The Railroad established regional land offices to sell portions of the land in order to finance construction of the railroad. The western land office, which encompassed the Washington Territory, was located in

---

[1]For purposes of this appeal, Meridian Oil, Inc., Delaware Coastal Oil and Gas Corp., and Elf Aquitaine, Inc., will be collectively referred to as Meridian.

Tacoma. When a contract for sale was executed, the purchaser was given the original contract and the land office retained a duplicate original. Deeds were issued only after the Railroad had received the patent for the land and after the land had been surveyed, which in many instances was years later.

When the first contracts of sale were executed, the land was sold without mineral reservations of any kind. Between 1882 and 1906 a number of different mineral reservations were used by the Railroad. They varied from no reservation, to reservations of "coal or iron" and "coal or iron or other minerals". By December 1902, the Railroad was frequently using the reservation of "coal or iron or other minerals, including gas and oil".

In March 1902, John Parker, a Tacoma lawyer and a land speculator, entered into five contracts with the Railroad for the purchase of 50,788 acres. One of those contracts, number 5300, dated March 1, 1902, included the property which is the subject of this litigation. That contract contained the following mineral reservation:

> [R]eserving and excepting from said lands however, such as are now known, or shall hereafter be ascertained, to contain coal or iron *or other mineral* and also the use of such surface ground as may be necessary for mining operations; and the right to access to such reserved and excepted coal and iron *or mineral* lands, for the purpose of exploring, developing and working the same; . . .

(Italics ours.) The italicized portions were interlineated in red ink on the Railroad's original contract kept at the land office. Mr. Parker's duplicate original was not produced at trial; thus, the court was unable to verify if it also contained the interlineation.

On April 19, 1902, Mr. Parker assigned his interest in the contract to Francis A. Ogden by completing an assignment on the back of the Railroad's duplicate original. On March 1, 1906, Mr. Ogden deeded the land to the Oriental Land and Improvement Company. On May 3, 1907, the Railroad

issued a fulfillment deed to Mr. Ogden, which contained the following reservation clause:

> [E]xcepting and reserving onto the party of the first part, its successors and assigns, forever, *all minerals of any nature whatsoever* upon or in said land, including coal and iron, and also the use of such surface ground as may be necessary for *exploring* for and mining or otherwise *extracting* and carrying away the same; . . .

(Italics ours.) Subsequent deeds conveying the land referred only to reservations of record.

After a series of reconveyances, Mr. Kunkel purchased the property in 1974 and brought this action to determine the meaning and extent of the reservation. The court awarded judgment in favor of the Kunkels, and reformed the deed by amending the mineral reservation to include only iron and coal. Meridian appeals these rulings.

We address whether the court erred in concluding the contract did not merge into the subsequently issued deed because we find that issue to be dispositive. The trial court concluded the Railroad was required to deliver a deed which conformed to the reservation contained in the contract. This conclusion was based on the trial court's finding there was no evidence Mr. Parker or Mr. Ogden had intentionally surrendered their rights to minerals, other than coal or iron. We disagree.

■ A deed made in full execution of a contract of sale of land merges the provisions of the underlying contract, including all prior negotiations and agreements leading up to the execution of the deed. *Black v. Evergreen Land Developers, Inc.,* 75 Wn.2d 241, 248, 450 P.2d 470 (1969); *Snyder v. Roberts,* 45 Wn.2d 865, 871, 278 P.2d 348, 52 A.L.R.2d 631 (1955). A deed which is acknowledged and recorded imparts constructive notice of title to subsequent bona fide purchasers for value and without actual notice. 2 Washington State Bar Ass'n, *Real Property Deskbook* § 30.28, at 30–22 (2d ed. 1986) (citing *Biles–Coleman Lumber Co. v. Lesamiz,* 49 Wn.2d 436, 302 P.2d 198 (1956)).

The exception to the doctrine of merger applies if either the "grantor or the grantee is attempting to *enforce* against the other, stipulations in the contract which are not contained in, not performed by, and not inconsistent with the deed *and* which are held to be collateral to or independent of the obligation to convey." (Italics ours.) *Snyder,* at 872. The question raised is whether the grantor Railroad intentionally reserved, and the original contracting purchaser intentionally surrendered, rights to all minerals of any nature whatsoever. If plainly expressed in the very terms of the deed, the terms of the deed are decisive. *Snyder,* at 872 (citing *Morris v. Whitcher,* 20 N.Y. 41, 47 (1859)).

The Kunkels are attempting to limit the mineral reservation to coal or iron as contained in the contract, disregarding the interlineations which are more consistent with the expanded mineral reservation of the deed. The issue is not collateral but is inherent in the extent of title passed. There is no dispute Mr. Ogden accepted the deed as written. The mineral reservation retained by the Railroad is clearly expressed in the terms of the deed. Thus, any inconsistency which existed between the contract and the deed was merged into the deed. *See Snyder,* at 875; *Moore v. Parker,* 83 Wash. 399, 145 P. 440 (1915) (merger applies even though the terms of the antecedent contract requiring the purchaser take subject to the encumbrances was expanded in the deed to include an assumption and agreement to pay); *Dobrusky v. Isbell,* 740 P.2d 1325 (Utah 1987) (under the doctrine of merger, the deed controlled a boundary line, even though the estate conveyed differed from that allegedly promised in the antecedent agreement); *Secor v. Knight,* 716 P.2d 790 (Utah 1986) (restrictive covenants of record after execution of an earnest money agreement and delivery of a warranty deed which did not give purchasers notice thereof did not prevent application of the doctrine of merger). The corollary is also true: *see Black v. Evergreen Land Developers, Inc., supra* (an antecedent oral agreement not inconsistent with the deed, does not merge in the deed).

The Kunkels also argue the reservation did not merge because there was no privity of contract between the Railroad and Mr. Ogden. *See Beren Corp. v. Spader,* 198 Neb. 677, 255 N.W.2d 247, 256 (1977). This argument ignores the clear language of the assignment which stated Mr. Parker transfers "all my right, title, interest and claim in and to the land *and contract* within described, unto Francis A. Ogden . . . heirs and assigns forever." (Italics ours.) The assignment specifically included Mr. Ogden's right to receive the deed directly from the Railroad. Thus, Mr. Ogden accepted both the benefits and obligations of the contract, stepping into the shoes of the assignee, Mr. Parker. Therefore, privity of contract existed. We conclude the court erred on the issue of merger.[2]

Next, we consider whether the deed's wording, "all minerals of any nature whatsoever", reserved to the Railroad the rights to oil and gas.

Meridian contends the trial court erred in concluding the term "minerals" is ambiguous. *McGary v. Westlake Investors,* 99 Wn.2d 280, 286, 661 P.2d 971 (1983). Meridian further distinguishes the cases relied on by the court as unique in that they involve the harvest of surface materials, such as sand and gravel.

■ Ambiguity is a question of law. *McGary,* at 286. In *Weyerhaeuser Co. v. Burlington Northern, Inc.,* 15 Wn. App. 314, 316, 549 P.2d 54 (1976), the court addressed whether the railroad's reservation of rights to "*all minerals of any nature whatsoever,* including coal, iron, natural gas and oil . . ." was ambiguous. *Weyerhaeuser* claimed ownership of certain basaltic andesite rock which the railroad

---

[2]Because we have determined the contract merged into the deed, it is not necessary to address the legality of the interlineation. However, we note there is an inference Mr. Parker accepted the expanded reservation when he made his assignment to Mr. Ogden on the back of the Railroad's original contract. Additionally, it was not the practice at that time to initial interlineations; if a party objected to the Railroad's unilateral expansion of mineral reservations, those reservations were deleted. Mr. Parker also signed other contracts after similar interlineations were completed.

had removed. The appellate court reversed the order of dismissal and held extrinsic evidence was admissible to explain the language of the reservation as it pertained to the rock. As noted in *Weyerhaeuser,* at 319 (quoting *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 96 P.2d 571 (1939)):

> Accordingly, it is apparent to us that "minerals" is at least ambiguous as to whether intended to include *all* inorganic material or simply valuable deposits such as "coal, iron, natural gas and oil."

We construe this holding as limiting the determination of ambiguity to surface materials.

*Puget Mill* involved the removal of sand and gravel and whether such removal constituted a breach of a reservation of rights to "all minerals". *Puget Mill* stated, at page 425:

> The word "minerals," standing alone, might by itself, under a broad, general, popular definition, embrace the soil, hence include sand and gravel, and all that is to be found beneath the surface. Under a strict definition, it might be limited to metallic substances. Under a definition coupling it with mines, it would include all substances taken out of the bowels of the earth by the processes of mining.

Therefore, the court concluded, at page 427, the term "mineral" is not definite and is susceptible to limitation or extension depending upon the intention with which it is used. *Puget Mill* also makes reference to *State ex rel. Atkinson v. Evans,* 46 Wash. 219, 89 P. 565 (1907) and its conclusion "minerals" refers to anything which may be extracted from the earth for profit, including oil. But *Puget Mill* rejects this interpretation as too liberal and states the better rule is that each case must be decided on its own facts including the language of the grant, the surrounding circumstances and the intent of the parties if such evidence can be ascertained. This conclusion is also affirmed in 1 Washington State Bar Ass'n, *Real Property Deskbook* § 18.7 (2d ed. 1986).

■ It is not necessary for us to decide whether the term "minerals" under all circumstances is ambiguous as a matter of law. Here, the language of the deed refers to

all minerals of any nature whatsoever upon or in said land, including coal and iron, and also the use of such surface ground as may be necessary for exploring for and mining or otherwise extracting and carrying away the same; . . .

The authority to explore and extract distinguishes this deed from one which must be construed as it pertains to surface materials. *See Puget Mill; Weyerhaeuser.* Reliance on *Atkinson,* which defined minerals as any material which could be extracted for profit, is more appropriate. As such, this deed is not ambiguous as a matter of law, and excludes the mineral rights to oil and gas from the grant.

The judgment is reversed.

MUNSON, A.C.J., and GREEN, J., concur.

Review granted at 113 Wn.2d 1016 (1989).