[No. 56388-8. En Banc. June 14, 1990.]

RAY H. KUNKEL, ET AL, *Petitioners*, v. MERIDIAN OIL, INC., ET AL, *Respondents*.

*The Dano Law Firm,* by *Harrison K. Dano* and *Jill Irene Lunn,* for petitioners.

*Foreman & Arch,* by *Dale M. Foreman* and *Thomas E. Janisch,* for respondents Meridian Oil, et al.

*Perkins Coie,* by *David E. Wagoner* and *Michael Rosenberger,* for respondent Delaware Coastal Oil.

SMITH, J.—Petitioners seek reinstatement of a declaratory judgment of the Grant County Superior Court holding that a deed reservation of "all minerals of any nature whatsoever upon or in [the] land, including coal and iron" did not include oil and natural gas because oil and natural gas are not unambiguously "minerals" under Washington law. The Court of Appeals, Division Three, reversed the trial court and concluded that the deed reservation clause unambiguously includes oil and natural gas and awarded to respondents the rights to "any material which could be extracted for profit."

We reverse the Court of Appeals and reinstate the decision of the trial court which reformed the deed to reserve only iron and coal.

On March 1, 1902, Tacoma attorney John A. Parker entered into a contract to purchase real estate from the Northern Pacific Railway Company. The railroad was to convey the land

> reserving and excepting from said lands however, such as are now known, or shall hereafter be ascertained, to contain coal or iron and also the use of such surface ground as may be necessary for mining operations; and the right to access to such reserved and excepted coal and iron lands, for the purpose of exploring, developing and working the same . . ..

On or about March 15, 1902, Northern Pacific's sales agent unilaterally interlineated the contract in red script, modifying the first reference to coal and iron to state "coal or iron *or other mineral.*" The agent modified the access provision to state "such reserved and excepted coal and iron *or mineral* lands." Mr. Parker never learned of the interlineation, which was made without his assent and without additional consideration.

On May 3, 1907, the railroad issued a fulfillment deed to Francis A. Ogden, successor in interest to Mr. Parker. The deed contained this reservation:

[E]xcepting and reserving unto the party of the first part, its successors and assigns, forever, *all minerals of any nature whatsoever upon or in said land,* including coal and iron, and also the use of such surface ground as may be necessary for exploring for and mining or otherwise extracting and carrying away the same . . ..

(Italics ours.) Subsequent deeds conveying the land referred only to reservations of record.

By intervening conveyances, the land[1] was ultimately purchased in 1974 and is now owned by Petitioners Ray H. Kunkel, his spouse, Lola M. Kunkel, and their children, Sharon M. Kunkel and Larry R. Kunkel, plaintiffs in the trial court (the Kunkels). The mineral reservation is now held by Burlington Northern, Inc., and Milestone Petroleum, Inc. The oil and natural gas rights, if the reservation clause is effective, are now held by Respondent Meridian Oil, Inc., defendant[2] in the trial court (Meridian).

The Kunkels filed a declaratory judgment action in the Grant County Superior Court to determine their interest in the property. They claimed title to oil and natural gas rights in the land, arguing that the unmodified 1902 contract reserved only coal and iron, the contract did not merge into the 1907 fulfillment deed, and even if it did, the phrase "all minerals of any nature whatsoever upon or in said land" did not include oil and natural gas within the contemplation of the parties.

Meridian defended, asserting that the interlineation by the sales agent accurately reflected the bargain entered into by Northern Pacific and Parker, that the contract reservation merged into the deed, and that the phrase "all minerals . . ." includes oil and natural gas *as a matter of law* and policy.

---

[1]The legal description of the land is:
"Units 13, 14, 15 and 16, Irrigation Block 81, Columbia Basin Project as per plat thereof filed March 30, 1964 records of Grant County, Washington."

[2]Delaware Coastal Oil & Gas Corporation, and ELF Aquitane, Inc., are foreign corporations and claim an interest in the land by virtue of an oil and gas lease with Burlington Northern, Inc.

The trial court agreed with the Kunkels. In his memorandum opinion dated April 18, 1988, the Honorable Clinton J. Merritt, Grant County Superior Court, stated:

> After hearing testimony from some of the foremost experts on the subject the Court can only conclude that there exists a division of opinions among the authorities at this time as to whether gas and oil were considered minerals by the experts in 1902. Certainly, it is difficult to contemplate whether Parker and the railroad thought gas and oil were considered a mineral in 1902.
>
> . . . .
>
> Certainly the evidence does not establish the necessary objective manifestation of mutual assent between the parties to the reservation in question that the reservation included the right to extract gas or oil.

The court concluded that the interlineations did not become part of the 1902 real estate contract, that the contract reservation of coal and iron did not merge into the 1907 deed, and that the reservation of "all minerals" was void. The court then reformed the reservation and limited it to coal and iron.

Meridian appealed.

The Court of Appeals, Division Three, reversed the trial court, holding that the contract had merged into the deed.[3] But in reaching its determination, the Court of Appeals concluded that the phrase "all minerals of any nature whatsoever upon or in [the] land . . ." unambiguously includes oil and natural gas. The Court of Appeals awarded to Meridian the rights to "any material which could be extracted for profit."[4]

The Kunkels petitioned this court for review, which we granted.[5]

Petitioners raise the single question whether, as a matter of law, oil and natural gas are unambiguously included in a

---

[3]*Kunkel v. Meridian Oil, Inc.*, 54 Wn. App. 675, 681, 775 P.2d 470 (1989).

[4]*Kunkel v. Meridian Oil, Inc.*, 54 Wn. App. 675, 682, 775 P.2d 470 (1989).

[5]113 Wn.2d 1016 (1989).

1907 deed reservation of "all minerals of any nature what-soever upon or in [the] land."

 In Washington, the term "minerals" is susceptible of different constructions.[6] It is therefore ambiguous.[7] In construing ambiguous language in a deed, any doubt is resolved against the grantor.[8]

The Court of Appeals relied upon *State ex rel. Atkinson v. Evans*, 46 Wash. 219, 89 P. 565 (1907), for its determination in this case that in a reservation clause "all minerals" is defined as "any material which could be extracted for profit". The Court of Appeals found the rule in *Atkinson* "more appropriate" than this court's superseding rule announced in *Puget Mill Co. v. Duecy*, 1 Wn.2d 421, 96 P.2d 571 (1939).

 *Puget Mill* construed a deed reservation which provided:

"The Seller hereby reserves unto itself, and unto its successors and assigns, the full, complete and absolute rights to all oils, gases, coal, minerals, metals and fossils of every name and nature which may be in or upon said land, or any part thereof, with the right of entry upon said land to prospect and explore for oils, gases, coal, minerals, metals, and fossils of every name and nature, and also to take, mine and remove the same . . ."[9]

The holder of the reservation sought title to sand and gravel under the clause. The court stated:

The word "minerals," standing alone, might by itself, under a broad, general, popular definition, embrace the soil, hence include sand and gravel, and all that is to be found beneath the surface. . . .

---

[6]*Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 96 P.2d 571 (1939).

[7]*Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 116, 411 P.2d 868 (1966) (statement capable of being understood in either of two or more possible senses is ambiguous). *See also Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 989, 472 P.2d 611 (1970).

[8]*Weyerhaeuser Co. v. Burlington Northern, Inc.,* 15 Wn. App. 314, 549 P.2d 54 (1976).

[9]*Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 422, 96 P.2d 571 (1939).

. . . .
. . . [I]f it did, it would include the soil itself. The better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained.[10]

As noted by the Court of Appeals, *Puget Mill* specifically rejected the rationale of *Atkinson*[11] as too liberal and stated that "the better rule is that *each case must be decided on its own facts*".[12] Yet the Court of Appeals nevertheless relied upon *Atkinson* as its authority for reversing the trial court's determination that a reservation of "all minerals" does not unambiguously include oil and natural gas. This reliance is apparently based upon a conclusion that the rule in *Puget Mill* is limited to cases involving surface minerals.[13] However, *Puget Mill* is not so limited. It states:

[I]t is clear that the term "minerals" does not include everything embraced in the mineral kingdom as distinguished from what belongs to the animal and vegetable kingdoms . . .. The better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained. . . .

. . . .
. . . *The term "minerals" is susceptible of different constructions . . ..*[14]

---

[10](Citation omitted.) *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 425–27, 96 P.2d 571 (1939).

[11]*See Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 96 P.2d 571 (1939).

[12](Italics ours.) *Kunkel v. Meridian Oil, Inc.,* 54 Wn. App. 675, 681, 775 P.2d 470 (1989).

[13]The court also stated that: "The authority to explore and extract distinguishes this deed from one which must be construed as it pertains to surface materials." *Kunkel,* at 682. This not only ignores the fact that the access reservation includes "mining or otherwise extracting and *carrying away*" any minerals, which is consistent with surface mineral removal, but also begs the initial question of what minerals may be extracted.

[14](Citation omitted. Italics ours.) *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 427–29, 96 P.2d 571 (1939).

The Court of Appeals, Division One, in analyzing *Puget Mill,* has stated that "[o]ne interpretation of [*Puget Mill*] is that *the term 'minerals' is ambiguous as a matter of* [*Washington*] *law.*"[15]

In *Puget Mill* this court emphasized that "*the real point is: What was the intention of the parties?*"[16] The rule for interpretation of language in mineral reservations in Washington is that what is reserved is what the parties intended to be reserved, and nothing more. "[E]ach case must be decided on the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained."[17] Thus, upon occasion, resort to extrinsic evidence will be necessary.

Here, the trial court was unable to interpret the reservation clause without resort to parol evidence. After evaluation of considerable extrinsic evidence, the court found that in this case the phrase "all minerals . . ." did not include oil and natural gas.

■ An appellate court cannot substitute its judgment for that of the trial court in resolving factual issues.[18] Statements of fact included within conclusions of law will be treated as findings of fact.[19] The Court of Appeals in this case erred in relying upon *Atkinson* because *Puget Mill* rejected the rule in *Atkinson.* The trial court found that the phrase, "all minerals . . .", as used by the parties in this case, did not include oil and natural gas. We will not disturb that determination on review.

---

[15](Citation omitted. Italics ours.) *Weyerhaeuser Co. v. Burlington Northern, Inc.,* 15 Wn. App. 314, 320 n.4, 549 P.2d 54 (1976).

[16](Italics ours.) *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 429, 96 P.2d 571 (1939).

[17]*Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 427, 96 P.2d 571 (1939).

[18]*Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

[19]*Ferree v. Doric Co.,* 62 Wn.2d 561, 567, 383 P.2d 900 (1963).

There should arise no apprehension that applying in this instance a case–by–case determination as required under *Puget Mill* will create a flood of litigation. The facts in this case are rather unique. As noted by the trial court, the Parker contract was formed during a two week period in March 1902 when land contracts were being interlineated by Northern Pacific's sales agent *after their execution*. By December 1902 the railroad was specifically reserving oil and natural gas in its sales contracts. There would thus remain few contracts requiring determination. Moreover, our decision in this case mitigates against any future claims contrary to its holding.

Meridian argues that it is the "majority rule" that oil and natural gas are "minerals" as a matter of law for the purposes of a reservation clause, citing a law review article, G. Reeves, *The Meaning of the Word "Minerals"*, 54 N.D.L. Rev. 419 (1978). None of the cases cited by the author of the article as establishing the "rule" are Washington cases. Despite *Puget Mill,* Meridian urges this court to adopt the "majority rule" in this case.

Only one of the "majority rule" cases was published before the 1902–1907 time period relevant to determining the intentions of the parties in this case: *Murray v. Allred,* 100 Tenn. 100, 43 S.W. 355 (1897) (*Murray v. "Allard"* in the Southwestern Reporter). *Murray* is counterbalanced by the only other "all mineral" reservation case published at the time, the leading "minority" or "Pennsylvania" rule case: *Dunham & Shortt v. Kirkpatrick,* 101 Pa. 36 (1882).

*Murray* relied for its decision, in part,[20] on *Hext v. Gill,* 7 Ch.App. 699 (1872), [1866–73] All E.R. 388, for the proposition that "minerals" comprise "[e]very substance which can be got from underneath the surface of the earth for the

---

[20]*Murray* also relied in part upon *Gill v. Weston,* 110 Pa. St. 312, 1 A. 921 (1885) to reject the rule in *Dunham*. However, *Weston* construed the Pennsylvania mining statutes and did not involve a reservation clause in a deed. It is inapposite.

purpose of profit."[21] By its decision in *Puget Mill,* this court rejected the rationale of *Hext,*[22] thus also rejecting the rationale of *Murray.*

In contrast, *Dunham* parallels the rationale of this court's decision in *Puget Mill.* The Pennsylvania court stated:

> It is true that petroleum is a mineral; no discussion is needed to prove this fact. But salt and other waters, impregnated or combined with mineral substances, are minerals; so are rocks, clays and sand; anything dug from mines or quarries; in fine, all inorganic substances are classed under the general name [of] minerals . . .. But if the reservation embraces all these things, it is as extensive as the grant, and therefore void.[23]

After noting that "in popular estimation petroleum is not regarded as a mineral substance", the court in *Dunham* asked, "How, then, did the parties to the contract . . . think and write?"[24] This is essentially the same as *Puget Mill's* question: "What was the intention of the parties?"[25]

*Dunham* has been interpreted as creating a *rebuttable presumption* that the word "minerals" or its equivalent, without specific mention of oil or natural gas, is not intended by transacting parties to include oil and natural

[21]*Murray v. Allred,* 100 Tenn. 100, 114–15, 43 S.W. 355 (1897) (quoting *Hext*).

[22]*Puget Mill* specifically rejected the reasoning of *State ex rel. Atkinson v. Evans,* 46 Wash. 219, 89 P. 565 (1907). *Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 427, 96 P.2d 571 (1939). *Atkinson* based its decision in part on *Northern Pac. Ry. v. Soderberg,* 188 U.S. 526, 47 L. Ed. 575, 23 S. Ct. 365 (1903), which in turn cites *Hext* in the text quoted by the *Atkinson* court. *See State ex rel. Atkinson v. Evans,* 46 Wash. 219, 223, 89 P. 565 (1907). Further, *Puget Mill* targets for rejection the "all substances which may be extracted from the earth for profit" definition of minerals approved by the Tennessee court in *Murray. See Puget Mill,* at 427.

[23](Citations omitted.) *Dunham & Shortt v. Kirkpatrick,* 101 Pa. 36, 43 (1882).

[24]*Dunham & Shortt v. Kirkpatrick,* 101 Pa. 36, 44 (1882).

[25]*Puget Mill Co. v. Duecy,* 1 Wn.2d 421, 429, 96 P.2d 571 (1939).

gas.[26] This is the equivalent of *Puget Mill*'s suggestion that each case must be decided on evidence proving the word "minerals" to include the substance in question. Washington is aligned with the "minority" rule.

Put simply, a party relying merely upon the language of a reservation of "all minerals" attempts to prove more than the plain language of the clause permits. While we may be persuaded that such a clause embraces, etymologically, all substances which are "mined," such as coal and metalliferous ores, we are not persuaded that it embraces fluids such as oil and natural gas any more than we are persuaded that it embraces, for example, water.[27]

Under Washington law, "all minerals of any nature whatsoever upon or in [the] land," does not mean what it appears to say.[28] It is capable of more than one interpretation.[29] A reservation of "all minerals . . ." is therefore ambiguous.[30]

■ Although the meaning of the reservation clause is ambiguous, construction of the reservation clause is certain. "[A]mbiguous language in a deed should be construed to

---

[26]*See* G. Reeves, *The Meaning of the Word "Minerals"*, 54 N.D.L. Rev. 419, 466 (1978).

[27]Water, of course, is a "mineral" substance "upon or in" land and may be of considerable economic value. Water is not, however, reasonably included within a blanket reservation of "all minerals" unless that was the intention of the parties.

[28]*See Puget Mill Co. v. Duecy*, 1 Wn.2d 421, 96 P.2d 571 (1939); *cf. Kunkel v. Meridian Oil, Inc.*, 54 Wn. App. 675, 681, 775 P.2d 470 (1989) (phrase is ambiguous as applied to surface minerals).

[29]*Puget Mill Co. v. Duecy*, 1 Wn.2d 421, 429, 96 P.2d 571 (1939).

[30]*Accord, Weyerhaeuser Co. v. Burlington Northern, Inc.*, 15 Wn. App. 314, 320 n.4, 549 P.2d 54 (1976). *See also Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 116, 411 P.2d 868 (1966) (statement "[c]apable of being understood in either of two or more possible senses" is ambiguous); *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970) (written instrument ambiguous if terms are uncertain or capable of being understood as having more than one meaning).

resolve the doubt against the grantor."[31] Since Meridian, the successor in interest to the grantor, did not persuade the trial court that "all minerals of any nature whatsoever upon or in [the] land" includes oil and natural gas, the rights to those substances belong to the Kunkels by virtue of their fee title.

The trial court, after examining considerable extrinsic evidence, concluded that the parties intended only iron and coal to be reserved by the "all mineral . . ." language, and ordered the deed reformed accordingly. The successors in interest to Northern Pacific thus retain title only to any iron and coal "upon or in" the land.

Oil and natural gas are not unambiguously included in a reservation of "all minerals" as a matter of law. Meridian failed to sustain its burden of proving that it was the intention of the parties, as evidenced by the language used in the 1907 deed, that oil and natural gas be reserved.

We reverse the Court of Appeals and reinstate the decision of the trial court which reformed the deed to reserve only iron and coal.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and GUY, JJ., concur.

---

[31]*Weyerhaeuser Co. v. Burlington Northern, Inc.*, 15 Wn. App. 314, 320, 549 P.2d 54 (1976) (citing *Hodgins v. State*, 9 Wn. App. 486, 513 P.2d 304 (1973)).