[No. 1409-1.    Division One.    June 18, 1973.]

BROTHER INTERNATIONAL CORP., *Plaintiff*, v. NATIONAL VACUUM & SEWING MACHINE STORES, INC., *Defendant*, MORSE ELECTRO PRODUCTS CORP., *Appellant*, RICHARD L. WELCH, *Respondent*.

*Breskin, Rosenblume & Robbins* and *Arnold B. Robbins*, for appellant.

*Uziel & Faltys* and *John H. Faltys*, for respondent.

JAMES, J.—The sole question presented by this appeal is whether the trial judge erred in failing to apply the "parol evidence rule."

The questioned determination was made in the course of the administration of the receivership of the defendant National Vacuum & Sewing Machine Stores, Inc., an insolvent corporation. The relevant facts are: Appellant Morse Electro Products Corporation was a supplier of merchandise to National. Because of difficulties encountered in collecting National's open account indebtednesses, Morse informed

National that it would extend no further credit without a security agreement.

Morse thereupon tendered and National signed a written agreement which provided that in consideration for the extension of a line of credit,

> NATIONAL hereby grants to MORSE a security interest in *all* of NATIONAL's inventory, now existing, or hereinafter acquired, or all proceeds from the sale of said inventory to secure any indebtedness arising out of this agreement.

(Italics ours.)

Respondent Richard L. Welch, receiver for National, sold National's entire inventory. National's indebtedness to Morse exceeds the amount realized from the sale and Morse asserts its entitlement to the entire proceeds of the sale under the terms of the security agreement.

At trial Welch contended that Morse and National intended that the security agreement would cover *only* merchandise sold to National on open account by Morse. Welch principally relies upon the letter of transmittal with which Morse mailed the security agreement to National. The letter was written by Morse's attorney and contained the following language:

> Bob Segall asked me to come up with some sort of legal document which would give Morse a sufficient security interest in any merchandise shipped to you, to warrant their once again billing you on a net 30 day basis. Enclosed is the result.
>
> I'm sure that both you and Bob realize that it's impossible to dream up any legal document that will absolutely guarantee payment. On the other hand, assuming that you intend to pay for anything you order from Morse, it really doesn't make any difference what you sign. The enclosed actually doesn't give Morse any greater rights against you, than they have by merely shipping to you on an open account. In the event, however, that anything tragic ever happens, this Security Agreement would give Morse a prior claim on *Morse merchandise* before any other creditors.

(Italics ours.)

Morse's attorney testified that he had discussed the mat-

ter of a security agreement with William Michael, National's principal. He said that he explained to Michael that Morse would require that the agreement cover everything that Michael owned, including "his desks and his furniture and his wife and his kids." and that "Mr. Michael at the time said that he had no objection to his wife." Morse's attorney further testified that the transmittal letter's language, which might be construed as evidencing an intent that the security agreement was to cover *only* Morse's merchandise, was "inadvertent."

When asked if he recalled discussing the contemplated security agreement with Morse's attorney, Michael testified, "I don't know that I did. I must have. I can't imagine him just sticking a cold deal in the mail and mailing it to me. I don't recall the conversations."

Michael also testified, however, that he did recall that he had discussed the matter of a security agreement with Morse's local representative and that it was his understanding that "this [was] to be a Morse deal all the way, that it wasn't implicating any other merchandise." He said that when he received the attorney's letter with the enclosed agreement, he took them to his own attorney before signing the agreement. He testified that his attorney advised him "that there'd be nothing wrong with us signing the things. There was nothing really in it that was going to hurt us in any way. There was nothing wrong with the security agreement in any way. All it was was a security agreement securing Morse merchandise."

The trial judge found that Morse intended that the security agreement and the transmittal letter were "to be taken and construed together, both being part of the proposed arrangement made by Morse to National to govern their future credit relationship," finding of fact No. 2, and that "National intended to grant to Morse, and Morse intended to acquire, a security interest only in Morse merchandise ordered and received by National." Finding of fact No. 3.

Based upon these findings, the trial judge concluded that the "Security Agreement . . . covered only Morse mer-

chandise," conclusion of law No. 2, and that Welch should account to Morse for only the proceeds received from the sale of Morse merchandise.

■ The so-called "parol evidence rule" is not a rule of evidence. It is rule of positive and substantive law. 30 Am. Jur. 2d *Evidence* § 1017 (1967); *Fleetham v. Schneekloth,* 52 Wn.2d 176, 324 P.2d 429 (1958). The question here presented is *not* whether Morse's letter and Michael's testimony should have been admitted in evidence. The question is whether the terms of the written security agreement could, *as a matter of law,* be varied by the letter or by the oral understanding asserted by Michael.

At 4 S. Williston, *Contracts* § 632A (3d ed. W. Jaeger 1961), various statements of the parol evidence rule are quoted. One which succinctly expounds the rationale of the rule is:

> When parties have deliberately put their engagements in writing, and such writing is complete on its face and is certain and definite as to the objects of their engagement, it is conclusively presumed that the whole contract of the parties and the extent and manner of their undertaking was reduced to writing, and cannot be contradicted, altered, added to or varied by parol or extrinsic evidence. It has long been recognized by the courts, that a different rule would soon render instruments in writing of no value and the temptations to commit perjury would be increased. [Citation omitted.] *Such parol testimony is not excluded because of no probative value, but because it is against the policy of the law that written contracts should be overturned in that manner.*

(Italics ours.) *Bushnell v. Elkins,* 34 Wyo. 495, 502, 245 P. 304, 51 A.L.R. 13 (1926). The rule has been stated in Washington as follows:

> [P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake.

*Buyken v. Ertner,* 33 Wn.2d 334, 341, 205 P.2d 628 (1949). Welch has not submitted a brief on appeal, and we are

uncertain as to the trial judge's reasons for concluding that the parol evidence rule did not preclude variation of the security agreement by a parol understanding which contradicted its terms.

■ There *are* definite exceptions and limitations to the parol evidence rule "which are as firmly established as the rule itself." *Buyken v. Ertner, supra* at 342. One commonly recognized exception permits the consideration of extrinsic evidence if the contract is only partially integrated, *i.e.,* incomplete. *Buyken v. Ertner, supra.*

> The doctrine of partial integration is that where a written instrument is obviously not, or is shown not to be, the complete contract, parol evidence not inconsistent with the writing is admissiable to show what the entire contract really was, by supplementing, as distinguished from contradicting, the writing.

(Footnotes omitted.) 30 Am. Jur. 2d *Evidence* § 1043 (1967).

The trial judge's oral opinion suggests that he may have felt that the security agreement was not fully integrated. He stated that he chose to follow the reasoning of Justice Finley's concurring opinion in *Green River Valley Foundation, Inc. v. Foster,* 78 Wn.2d 245, 252, 473 P.2d 844 (1970), and was thus led to conclude that he should "apply the rule of commercial reasonableness" and "read both documents together."

■ As articulated by Justice Finley at page 260, the "standard of commercial reasonableness" permits the consideration of extrinsic evidence to vary the terms of a written contract where either party to a contract "[does] not customarily trade in the market in which the property exchanged is bought and sold, . . . regardless of assertions as to integration." But concurring appellate opinions are not precedential. *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968). The majority in *Green River* found that "[t]he agreement consists of two documents, the printed earnest money form and the promissory note, each of which has reference to the other. These should be read

together." *Green River Valley Foundation, Inc. v. Foster, supra* at 248. Based upon this finding, it was held that no parol evidence problem was presented.

The parol evidence rule still obtains in Washington. Despite his doubts concerning indiscriminate enforcement of the rule, Justice Finley recognizes that:

> There are therefore sound reasons of law and policy for adherence to the classical formulation of the parol evidence rule between merchants and those who customarily trade in a market in which the property in which they deal or services which they supply are bought, sold, or contracted for.

*Green River Valley Foundation, Inc. v. Foster, supra* at 259. Morse and National *were* merchants who customarily traded in a familiar market, and consequently the "standard of commercial reasonableness," even if adopted in Washington, would not justify the consideration of extrinsic evidence to vary the terms of the security agreement. By its terms, it is clearly a fully integrated contract. The rule in Washington remains as stated in *Buyken v. Ertner, supra* at 345:

> [W]here a written agreement *purports* to cover the entire subject matter with respect to which the parties are contracting, and fraud or mutual mistake is not claimed, evidence of a contemporaneous or prior oral agreement contradicting or altering the terms of the writing is inadmissible.

Reversed and remanded.

FARRIS and CALLOW, JJ., concur.