IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 32791-4-III |
| TODD M. CHISM, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NICOLE C. CHISM, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Todd Chism appeals the property distribution ordered in the dissolution of his and Nicole Chism's marriage. Specifically, he challenges the trial court's finding that, at the time of trial, the Chisms owed Ms. Chism's parents, Garry and Shirley Will, over $220,000 for loans extended to the Chisms in 2000 and 2004. He argues that the transfers were gifts, or—if loans—were demand obligations whose collection was time barred by the time of the dissolution trial. He also assigns error to the court's consideration of what he characterizes as parol evidence from his ex-wife and her mother.

We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

Todd and Nicole Chism were divorced in August 2014 following an 18-year marriage. Among the community liabilities found by the trial court and included in the property distribution were two personal loans made by Garry and Shirley Will, Ms. Chism's parents. One was in the amount of $160,000 and the other was in the amount of $60,961. The court ordered both liabilities to be paid by Ms. Chism.

The evidence at trial bearing on the loans consisted of the testimony of Nicole Chism, Shirley Will, and Todd Chism, and on two writings and a cashier's check.

Ms. Chism and Ms. Will testified that sometime before October 28, 2000, the Wills purchased an 11-acre parcel of property in Nine Mile Falls that the Chisms had identified as a desired home site. According to Ms. Chism, "my father and mother were gracious enough to loan us the money" by "purchas[ing] the property for us in their names because we did not have the financial means to do it." Verbatim Report of Proceedings (VRP) at 21. The Wills purchased the 11-acre parcel for $250,000.

The Chisms thereafter realized they could not get a building permit unless the property was in their names, so the Wills quitclaimed four acres of the parcel—the waterfront acreage, and thereby the most valuable—at an agreed value of $160,000. Ms. Chism testified that this was "with the anticipation that when we had enough money we would pay them back." *Id.* at 21. Ms. Chism testified that there was never any discussion with her parents that the transfer of the four acres was a gift. Ms. Will

2

testified that in transferring the property, she did not intend to make a gift to the Chisms and that Mr. Chism "assured us the money would be paid back as soon as they were able to." VRP at 228-29.

A writing was prepared and signed by the four parties, with the Chisms signing as "borrower[s]" and the Wills signing as "lender[s]." Ex. R104. It stated:

> THIS AGREEMENT BETWEEN TODD M. CHISM AND NICOLE C. CHISM (borrower) AND GARRY A. WILL, SR. AND SHIRLEY A. WILL (lender), THOUGH UNNOTARIZED, SHALL BE HELD TO BE LEGAL AND BINDING BY ALL CONCERNED PARTIES.
>
> WE, TODD AND NICOLE CHISM, IN RETURN FOR LOVE AND AFFECTION HAVE RECEIVED A QUIT CLAIM DEED TO 4 ACRES (PARCEL NO. 5809608) FROM GARRY AND SHIRLEY WILL. THE REAL PROPERTY VALUE AT TIME OF SIGNING OF THIS AGREEMENT IS DETERMINED TO BE $160,000.00.
>
> IF THIS PROPERTY IS SOLD, THE BORROWERS AGREE THAT THE $160,000.00 LOAN/GIFT SHALL BE REPAID TO LENDER WITH NO INTEREST OR PENALTIES CHARGED OR ACCRUED TO/BY EITHER PARTY.

*Id.*

Ms. Will testified that the reason for the "loan/gift" reference in the writing was "[b]ecause I was concerned that if something happened to my husband or myself or both of us together, I didn't want the property tied up in our estate." VRP at 232-33. Apart from that contingency, she testified she "expected to be repaid." *Id.* at 233.

There was a small, older home located on the Wills' remaining seven acres of the Nine Mile Falls property that the Chisms managed and rented on the Wills' behalf. The

3

Chisms forwarded the $600 a month received in rent until Mr. Chism was arrested on some criminal charges (later dismissed) and, according to Ms. Will, "they were having a lot of financial difficulties since he wasn't working" at the time. VRP at 235.

Mr. Chism acknowledged the Wills purchased the Nine Mile Falls property and deeded the four acres to himself and Ms. Chism, but testified that any issue of repayment "was just kind of left open." VRP at 72. He testified he fixed up the rental home on the property and "rent[ed] that out and gave that $600 a month from rental to the Wills." VRP at 72-73. He also testified he had "put a lot of money, paid taxes and insurance and everything" on the rental house. VRP at 76. In response to his lawyer's questioning, he agreed that the value of the rental house would "more than satisfy" any loan. *Id.*

The second loan found by the trial court that Mr. Chism challenges on appeal was made in November 2004, on investment real estate that the Wills purchased on the South Hill of Spokane. Mr. Chism had identified the property, explaining at trial that he became aware of a gentleman who wanted to sell part of his land, so he got involved in surveying and segregating a parcel that he acquired in "kind of a joint venture" with Mr. Will. VRP at 108. According to Mr. Chism, Mr. Will "was putting up the front money and I was going to be involved in the development." *Id.* Ms. Will testified, similarly, that she and her husband purchased the property with the understanding that Mr. Chism would develop it and the couples would split the profit. The purchase cost was $60,960.82.

The November 2004 arrangement was also reflected in a writing, which said

Garry and Shirley Will agree to loan Todd and Nicole Chism the purchase cost of parcel #35262.0128 in the amount of $60,960.82. The original loan amount will be repaid at a mutually agreed upon time or when the property is sold or transfers ownership. The loan will be without interest but any increase in property value from the original purchase price/loan amount will be split equally between the parties.

Ex. R112.

The witnesses agreed that as a result of a downturn in the real estate market, the property had never been developed. Ms. Will testified that she and her husband were still waiting to be repaid.

In 2008, the Washington State Patrol arrested Mr. Chism on charges of child pornography, which were later proven false. The Chisms reached a substantial legal settlement with the State as a result of the false charges, from which they received $1.5 million in or about 2012. Ms. Will acknowledged at the time of the Chisms' dissolution trial that she and her husband had not made demand for repayment by the Chisms of the two loans at issue following the legal settlement, explaining that "I didn't feel that they were in financial condition because of the debt they had accrued during the time that he was being investigated." VRP at 243.

At the time of trial, neither loan had been repaid.

At the conclusion of a several day bench trial, the trial court found, among other matters, that the transfers in 2000 and 2004 were loans that were going to be repaid. It

5

assigned them as liabilities to Ms. Chism in distributing the couple's assets. Mr. Chism appeals.

## ANALYSIS

Mr. Chism challenges the trial court's findings that the transfers were loans that remained due and owing at the time of the dissolution trial. He also argues that the trial court improperly considered parol evidence.[1] We first address the parol evidence issue and then turn to the sufficiency of the evidence to support the trial court's findings, and whether the findings support the court's conclusions.

*I. The trial court properly considered evidence of negotiations and*
*circumstances surrounding the Wills' monetary advances in 2000*
*and 2004 and implicitly found that the parties' writings were, at*
*most, partially integrated*

Mr. Chism argues the trial court improperly considered parol evidence. Ms. Chism argues we should not entertain that argument for the first time on appeal. Both parties' arguments proceed from a misunderstanding of the limitation on parol evidence.

"The so-called 'parol evidence rule' is not a rule of evidence. It is [a] rule of positive and substantive law." *Brother Int'l. Corp. v. Nat'l Vacuum & Sewing Machine Stores, Inc.*, 9 Wn. App. 154, 157, 510 P.2d 1162 (1973). It "only applies to a writing

---

[1] Mr. Chism also argues that the outcome of this appeal will collaterally estop the Wills from relitigating whether the advances were enforceable loans because Ms. Will was in privity with Ms. Chism during the divorce proceedings. Br. of Appellant at 17-20. Since we affirm the trial court, we need not address the issue.

intended by the parties as an 'integration' of their agreement; i.e., a writing intended as a final expression of the terms of the agreement." *Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986). A writing may not be integrated at all, in which case parol evidence is generally admissible. *Id.* at n.1. Or it may be partially integrated, in which case terms not included in the writing may be proved by extrinsic evidence insofar as they are not inconsistent with the written terms. *Id.* at 556.

"People have the right to make their agreements partly oral and partly in writing, or entirely oral or entirely in writing; and it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not." *Barber v. Rochester*, 52 Wn.2d 691, 698, 328 P.2d 711 (1958). Accordingly, Ms. Chism's argument that the issue of parol evidence may not be raised for the first time on appeal is misplaced. Even if the integration issue was not argued in the trial court and even if the court's belief about the completeness of the parties' writings was not explicitly addressed in its findings, the court necessarily decided whether the agreement was integrated, partially or at all, in order to apply substantive contract law.

Whether an agreement is fully or partially integrated is a question of fact. *Emrich*, 105 Wn.2d at 556. The absence of an integration clause supports a finding that a writing is only partially integrated. *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 140 Wn.2d 568, 579-80, 998 P.2d 305 (2000). Since neither of the parties' 2000 or 2004

7

writings contains an integration clause, Mr. Chism's bald assertion on appeal that "the subject written agreements or putative financial obligations were fully integrated . . . on their face" is utterly lacking in foundation. Br. of Appellant at 2. At a minimum, in order to determine whether an agreement is integrated, partially or at all, "'the court may consider evidence of negotiations and circumstances surrounding the formation of the contract.'" *Mortenson*, 140 Wn.2d at 579 (quoting *Denny's Rests., Inc. v. Sec. Union Title Co.*, 71 Wn. App. 194, 202, 859 P.2d 619 (1993)).

It is Mr. Chism who contends the writings are integrated and who therefore bore the burden of establishing integration at trial. That being the case, the absence of a finding of fact on integration is interpreted as a finding against him on that issue. *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 524, 22 P.3d 795 (2001). Moreover, it is implicit in the trial court's findings that it found the parties' writings to be partially integrated, at most, because it finds agreement on matters that are not reflected within the writings' four corners.

An implicit finding that the writings were at most partially integrated is supported by substantial evidence. Neither writing contains an integration clause. Both writings are minimal and appear to have been prepared by laypersons. The parties were close family members and therefore more likely to be comfortable with a writing that was less than complete. And, of course, both Ms. Chism and Ms. Will testified to understandings that are not reflected in the writings.

Given the court's implicit finding that the writings were not fully integrated, it did not err in relying on the testimony of the parties to fill in the gaps as to the agreements made in 2000 and 2004.

## II. Substantial evidence supports the trial court's findings

To determine the intent of the parties to a written agreement, courts begin with the language of the agreement, giving words their ordinary meaning. *Hearst Commc'ns, Inc., v. Seattle Times Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005). When contract interpretation does not depend on extrinsic evidence it is a question of law to be reviewed de novo. *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 517, 296 P.3d 821 (2013); *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 298, 149 P.3d 666 (2006). But when a court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact. *Berg v. Hudesman*, 115 Wn.2d 657, 667-68, 801 P.2d 222 (1990). In that case, the trial court's finding is reviewed for substantial evidence. *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011).

Where the trial court finds the existence of an oral agreement or an agreement that is partly oral, as in this case, we review whether substantial evidence supports the trial court's findings of the existence of the oral agreement and its terms. *Ban-Co Inv. Co., v. Loveless*, 22 Wn. App. 122, 131-32, 587 P.2d 567 (1978). Substantial evidence means "a sufficient quantum of evidence in the record to persuade a reasonable person that the

9

declared premise is true." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

The following findings by the trial court are relevant to the issues on appeal:

6. The Wills, parents of Ms. Chism, had loaned the community money during the course of the marriage on several occasions for business arrangements.

7. These loans from the Wills were documented and the money was paid back to them.

8. The Wills loaned $160,000.00 to the community in 2000 and there is a writing to evidence that loan.

9. This $160,000.00 loan was used to purchase the Walnut Springs parcel that the family home was built on.

10. The Wills also loaned the community $60,961.00 for the purchase of the South Hill lot.

11. The Court found the testimony of Ms. Will to be very credible and pretty candid.

12. The Wills are getting ready for retirement, have about $500,000.00 in their savings account to live on and are expecting to have this loan money repaid.

13. The Wills understandably did not demand earlier repayment on these two remaining loans as the parties and the grandchildren were going through significant financial hard times and emotional turmoil.

14. Both the South Hill lot loan and Walnut Springs loan are valid.

Clerk's Papers (CP) at 72. Mr. Chism assigns error to only findings 8 through 14. The court's findings that the Wills had loaned the Chisms money on several other occasions that were documented and in which the loans were always repaid are not challenged. Unchallenged factual findings are verities on appeal. *In re Marriage of Raskob*, 183 Wn. App. 503, 510, 334 P.3d 30 (2014).

10

Apart from Mr. Chism's mistaken argument that parol evidence was not admissible, we discern from his briefing only two arguments as to why findings 8 through 14 are unsupported. The first is that "[b]ased upon the manner and wording of the written documents . . . these two (2) separate transfers of funds could easily on their face be considered outright 'gifts' rather than loans." Br. of Appellant at 13.

Mr. Chism ignores the indicia "on their face" that the written documents could be considered loans. The 2000 document identifies the parties as "borrower[s]" and "lender[s]" and states that if the real property is sold, "the borrowers agree that the $160,000.00 loan/gift shall be repaid to lender." Ex. R104. The 2004 document states that the Wills "agree to loan" the Chisms $60,960.82, that "the . . . loan amount will be repaid," and that "the loan will be without interest." Ex. R112. The trial court was entitled to consider other evidence, including Ms. Chism's and Ms. Will's testimony concerning understandings discussed but not reflected in the writings, the Wills' financial situation, and the parties' history that monies loaned to the Chisms by the Wills were repaid.

As always, "[c]redibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The trial court's findings that the monies advanced were valid loans is supported by substantial evidence.

11

Mr. Chism's only other discernible argument is that "there was no deadline for any arguable repayment," making the loans "demand notes under long-established Washington case law" to which he argues a six-year statute of limitation applies. Br. of Appellant at 13. Generally, actions for breach of written contracts have a six-year limitations period, RCW 4.16.040. A limitations period begins to run when the claim has "accrued." RCW 4.16.005. A claim is said to accrue when a party has the right to enforce the cause of action and seek relief in the courts. *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 859, 953 P.2d 1162 (1998). These principles apply to an action on a demand loan, which is a loan agreement that does not provide for a specific time or period for repayment. *Nilson v. Castle Rock Sch. Dist.*, 88 Wn. App. 627, 630, 945 P.2d 765 (1997). *But cf.* RCW 62A.3-118(b) (ten-year limitations period applies if the note is a negotiable instrument and no demand has been made).

The parties' writings provided for repayment not on demand, but on contingencies. The October 2000 agreement indicated that the $160,000 would be repaid "if [the] property is sold." Ex. R104. If that were the parties' only agreement, an effort by the Wills to collect at an earlier time would fail, since the repayment obligation had not yet accrued—unless the court found that the parties had not intended the debt to be contingent, but only relied on the future sale as a convenient time for repayment. In that event, if the future sale did not happen as contemplated, the law would require repayment to be made within a reasonable time. *Noord v. Downs*, 51 Wn.2d 611, 614, 320 P.2d 632

12

(1958); *and see* Annotation, *Agreement Postponing Payment of Pre-Existing Debt until Happening of Some Specific Contingency Wholly or Partially within Debtor-Promisor's Control as Requiring Payment within a Reasonable Time, Even Though the Contingent Event Has Not Occurred*, 148 A.L.R. 1075 (1944). Of course, according to Ms. Chism's and Ms. Will's testimony, the parties had agreed that "the money would be paid back as soon as [the Chisms] were able to," and as of the time of trial, that had not yet happened—or at least, hadn't happened more than six years earlier. VRP at 228-29. The trial court implicitly found that the contingency for repayment was the Chisms' financial ability to repay in light of its finding that the Wills did not demand earlier repayment as "the parties and the grandchildren were going through significant financial hard times and emotional turmoil." CP at 72, Finding 13.

The parties' November 2004 agreement, which Mr. Chism himself characterized as a "joint venture" arrangement, did not call for repayment until "a mutually agreed upon time or when the property is sold or transfers ownership." Ex. R112. There was no evidence that any of those contingencies had occurred prior to the time of trial.

The trial court's conclusion that the loans from the Wills were valid and remained enforceable is supported by its findings.[2]

---

[2] We also point out that the trial court could have reached the same conclusion based on other findings supported by the evidence. First, where a note does not provide a time for repayment, an exception to construing it as a demand note exists "when, at the time of contracting, the parties contemplated delay in making the demand and where

13

No. 32791-4-III
*In re Marriage of Chism*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.                                    Fearing, J.

---

'speedy demand would violate the spirit of the contract.'" *Nilson*, 88 Wn. App. at 630
(quoting *Barer v. Goldberg*, 20 Wn. App. 427, 476, 582 P.2d 868 (1978)). Second,
equitable estoppel can be raised to prevent an obligor from relying on the statute of
limitations if the defendant made representations or promises to perform that lulled the
plaintiff into delaying timely action. *Peterson v. Groves*, 111 Wn. App. 306, 311, 44
P.3d 894 (2002). The existence of a close family relationship has been held to be an
important factor as a basis for reliance. *Id.* at 311 (citing Allan E. Korpela, Annotation,
*Fiduciary or Confidential Relationship As Affecting Estoppel to Plead Statute of
Limitations*, 45 A.L.R.3d 630 (1972)).