# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MAL ICIOUS, LLC, a Washington limited liability company, | No. 59739-0-II |
| Respondent, | |
| v. | |
| RANDOM ERIK VAUGHN; ORIGINAL INVESTMENTS, LLC, a Washington limited liability company; DANK'S WONDER EMPORIUM, LLC, a Washington limited liability company; DWE FRANCHISE, LLC, a Washington limited liability company; ATM SERVICE PRO, INC., an Oregon corporation; RENEWABLE INVESTMENTS INC., an Oregon corporation; ALYSSA WHITE; and ROBERT A. DAVENNY, JR, | UNPUBLISHED OPINION |
| Appellants, | |
| MARK A. LAVERGNE, MAL ICIOUS, LLC, a Washington limited liability company, 2020 SOLUTIONS EDMONDS, LLC, a Washington limited liability company, 2020 SOLUTIONS EPHRATA, LLC; 2020 SOLUTIONS SOAP LAKE, LLC, a Washington limited liability company, | |
| Third-Party Defendants. | |

GLASGOW, J.—Mal Icious LLC (MAL) contracted with Random Vaughn to manage and staff a cannabis retail store that it owned in Edmonds, Washington. While operating the store, Vaughn regularly transferred MAL's profits to himself and his affiliates and inflated costs in the Edmonds store's accounting records to disguise his actions. Through his girlfriend, Alyssa White, Vaughn applied for and received a federal Paycheck Protection Program (PPP) loan based on the

Edmonds store's labor costs. Although the loan was later forgiven, Vaughn did not credit its value to MAL.

Two years after signing the contract, MAL's owner ousted Vaughn and sued him for conversion and breach of contract, among other claims. After a bench trial, MAL prevailed on its claims for breach of contract and conversion. The trial court awarded MAL damages based on net profits Vaughn had withheld, federal tax penalties MAL had accrued, credit for the PPP loan, and the value of a voidable transfer Vaughn fraudulently made to his father. It also awarded MAL prejudgment interest and attorney fees.

Vaughn appeals but does not identify in his assignments of error any challenge to specific findings of fact. He argues that Washington's *Frye*[1] doctrine should have barred testimony from MAL's forensic accounting expert at trial; that the court should not have awarded damages based on federal tax penalties, the uncredited PPP loan, and the fraudulent transfer to Vaughn's father; and that MAL was not entitled to prejudgment interest or attorney fees. We affirm and award MAL attorney fees on appeal.

FACTS

I. BACKGROUND

Mark LaVergne formed Mal Icious LLC in order to obtain licenses from the Washington State Liquor and Cannabis Board to run cannabis retail stores. Clerk's Papers (CP) at 1553 (Finding of Fact (FF) 6).[2] LaVergne planned to open a cannabis store in Edmonds but was unable

---

[1] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923)

[2] To describe the underlying facts, we rely to some extent on the trial court's unchallenged findings of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We also note that many facts presented in the appellants' opening brief are unsupported by citations in violation of RAP 10.3(a)(6).

to run the store himself. In June 2018, MAL entered into several contracts with Random Vaughn's company, Dank's Wonder Emporium Franchise LLC, that granted Dank's total operational control over the Edmonds store. At the time, Vaughn owned his own cannabis store in Olympia.

Vaughn drafted a general service agreement and included the following indemnification provision:

> [T]o the extent permitted by applicable law, each Party agrees to indemnify and hold harmless the other Party, and its respective directors, shareholders, [affiliates], [officers], agents, employees, and permitted successors and assigns against any and all claims, losses, damages, liabilities, penalties, punitive damages, expenses, *reasonable legal fees and costs of any kind or amount whatsoever*, which result from *or arise out of any act or omission of the indemnifying party*.

Ex. 3 (emphasis added).

Vaughn managed the Edmonds store and staffed it with workers contracted from Renewable Investments Inc., a company owned by Vaughn's girlfriend, Alyssa White. Throughout his tenure running the Edmonds store, Vaughn regularly transferred its revenue to his Olympia store and other entities affiliated with Vaughn, rather than sending the profits to MAL. CP at 1555 (Conclusions of Law (CL) 2).[3]

In February 2020, LaVergne and his associate, James Pottenger, met with Vaughn to ask for accounting records in order to do MAL's 2019 taxes. Vaughn did not immediately provide accounting records, claiming that the books were not ready. During the meeting, Vaughn complained about the difficulty of running a cannabis business in Washington and indicated that he planned to move to California. Afterward, LaVergne and Pottenger discussed the need to find a new manager to replace Vaughn, and ultimately to sell the store.

---

[3] The trial court's conclusions of law contain several findings of fact, and we treat them as such. *See Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 903, 792 P.2d 1254 (1990). Vaughn does not assign error to any of the court's findings of fact.

In May 2020, White received a $366,334 PPP loan that she had applied for on behalf of ATM Service Pro Inc., a company she owned that was closely connected to Renewable Investments. The loan application was based in whole or in part on payroll for contract labor for MAL's Edmonds store. The loan was later forgiven. Vaughn and White did not disclose the PPP loan or credit any of its value to MAL.

In June 2020, Vaughn's father, Robert Davenny Jr., received a $350,000 transfer from White's company, Renewable Investments. Davenny had loaned Vaughn $658,000 a few years previously and interpreted White's transfer as partial repayment of the loan.

LaVergne found a buyer and new manager for the store during late summer of 2020. In September, LaVergne, Pottenger, and the new manager went to the Edmonds store to take an inventory and to oust Vaughn's site manager and employees.

MAL sued Vaughn for breach of contract, embezzlement, conversion, and voidable transfers, among other claims. MAL further contended that it had accrued federal income tax liability due to Vaughn's withholding of profits from the Edmonds store. In January 2021, MAL retained forensic accountant Tiffany Couch to reconstruct Vaughn's financial records for the Edmonds store in preparation for trial.

## II. EXPERT TESTIMONY

A bench trial occurred in January 2024. MAL called Couch to testify as an expert witness. Couch testified to her qualifications, including a bachelor's degree in accounting, a CPA credential, a certification in financial forensics from the American Institute of Certified Public Accountants, and roughly twenty years of professional experience, among other things.

Couch testified that she had relied on several different records to reconstruct Vaughn's books, most notably point-of-sale reports from Greenbits;[4] a QuickBooks file maintained by Vaughn or someone employed by Vaughn; a "Cash Tracker" Excel spreadsheet that purportedly tracked day-to-day sales and expenses from the Edmonds store; and Vaughn's payroll reports. 1 Verbatim Rep. of Proc (VRP) at 152. Couch testified that she chose to rely on the Cash Tracker, Greenbits, and the QuickBooks balance sheet because all three systems tracked with one another and entries in each were made relatively contemporaneously. Couch declined to rely on an additional ledger of Vaughn's called the transaction summary. Couch believed the transaction summary was created after Vaughn and MAL's business relationship had ended because its transactions had all been entered into QuickBooks in October 2020, after litigation had begun.

Couch testified to several irregularities in Vaughn's records that led her to conclude he owed money to MAL. For instance, Couch found an inventory shortage by comparing the cannabis inventory that should have been present in the Edmonds store based on the Greenbits reports with the inventory count LaVergne had done in September 2020. Additionally, Couch testified that she had compared the amount of cash on hand in the Edmonds store as reported in the QuickBooks balance sheet to the cash on hand as counted by LaVergne in September 2020 and discovered a deficit of $1.1 million. She further testified that the Cash Tracker revealed that the "missing cash" had been sent to a safe in Vaughn's Olympia store. 1 VRP at 163. She identified "exorbitant" overcharges to MAL for various services, including payroll, marketing, and location oversight. 1 VRP at 174.

---

[4] Greenbits is a retail software system for cannabis dispensaries to track sales and purchases of cannabis.

Based on the irregularities she found, Couch made several adjustments to Vaughn's accounting records in order to reach a conclusion about how much money he owed to MAL. Specifically, Couch adjusted location oversight charges, equipment rents, subcontractor expenses, and marketing buys. Couch reduced Vaughn's large location oversight charges to a $5,000-per-month figure based on oversight charges that were "a few thousand dollars for a six-month period" in 2018, noting that no invoices were available after that time. 1 VRP at 175. She similarly reduced equipment rental charges from over $400,000 down to $5,000 per month based on an early lease agreement. And she adjusted Vaughn's marketing costs downward from $638,000 to $477,000— a "relatively conservative" figure based on industry standards—because she could only identify $379,000 in outgoing payments to advertising platforms. 2 VRP at 229.

Couch testified that the only documentation of payment made to workers at the Edmonds store—all of whom were subcontracted through Renewable Investments—was a series of Excel spreadsheets that listed all workers, the wages that they earned, and whether they were working full time or part time. The spreadsheets revealed "a mark-up of one and a half to three times the amount of their wages as a charge to Edmonds." 1 VRP at 180-81. Couch believed that the markup was out of line with the "relatively small fee" that payroll companies ordinarily charge and adjusted the labor costs downward to be more in line with industry standards. 1 VRP at 181. Couch also testified that it was "more likely than not" that Vaughn and White had used the Edmonds store workforce to apply for their PPP loan, based on the number of workers listed on Vaughn's payroll documents and the fact that Vaughn had no other stores operating at the time. 1 VRP at 185.

Couch testified that she collaborated with a tax accountant to calculate the penalties and interest that MAL had accrued by failing to pay federal taxes due to Vaughn's withheld profits.

She reported that the tax accountant had prepared tax returns for MAL for 2019 and 2020 and calculated the associated penalties based on Couch's adjusted accounting records.

### III. COURT'S ORDER AND FINDINGS

The trial court assessed the witness testimony and found that Vaughn was not credible, but that the other testifying witnesses—including Couch—were. Ultimately, the court found that MAL had met its burden on its claims for breach of contract and conversion. It awarded $1,445,081.48 in damages to MAL from Vaughn, including $858,801.71 in net income from the time period when Vaughn was managing the Edmonds store; $366,333.77 from the PPP loan that was forgiven but not credited to MAL; $131,029 for 2019 tax penalties; and $88,917 for 2020 tax penalties. The court also awarded a $350,000 judgment for MAL against Davenny based on the loan repayment transfer he had received from White and Vaughn. Finally, the court found that MAL had "established that prejudgment interest on its net income is appropriate," CP at 1558 (CL 4), and ordered Vaughn to pay $560,461.26 in prejudgment interest and $257,114.50 in attorney fees. CP at 1562.

Vaughn appeals. He argues that Couch's testimony should have been barred under *Frye*; that the court erred in awarding damages based on federal tax penalties, the uncredited PPP loan, and the transfer to Davenny; and that MAL was not entitled to prejudgment interest or attorney fees. We disagree and affirm.

### ANALYSIS

### I. *FRYE* CHALLENGE

Vaughn contends that the court should not have admitted Couch's testimony on the basis that it does not meet the *Frye* standard. But Vaughn waived this claim because he failed to raise a *Frye* challenge below.

7

The *Frye* standard is an evidentiary test that Washington courts use to evaluate expert testimony regarding "novel scientific evidence." *In re Det. of Pettis*, 188 Wn. App. 198, 205, 352 P.3d 841 (2015). Under *Frye*, such evidence is admissible if "it is based on methods that are generally accepted in the scientific community." *Id.*

We "may refuse to review any claim of error which was not raised in the trial court" except for claims of "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right." RAP 2.5(a). "[F]ailure to lay an adequate foundation under *Frye*" is not a "manifest error affecting a constitutional right." *State v. Florczak*, 76 Wn. App. 55, 72, 882 P.2d 199 (1994). It is an evidentiary issue not of constitutional magnitude. Thus, "[w]hen a party fails to raise a *Frye* argument below, a reviewing court need not consider it on appeal." *In re Det. of Taylor*, 132 Wn. App. 827, 836, 134 P.3d 254 (2006).

Here, Vaughn discusses many reasons why he believes that Couch's analysis was incorrect, but his legal argument is rooted in *Frye*. Vaughn concedes that he raised no *Frye* challenges at trial. Therefore, this claim of error is waived. Appellate courts are not well-positioned to evaluate whether a methodology is generally accepted in a particular field without the development of a record below, and we decline to do so here.[5]

## II. DAMAGES FOR FEDERAL TAX PENALTIES

Vaughn, discounting Couch's testimony as not credible, argues that the trial court erred in awarding MAL damages based on federal tax penalties in the absence of additional evidence such as LaVergne's tax returns, IRS correspondence, and testimony from a tax expert. We disagree.

---

[5] As discussed below, the trial court found Couch's testimony to be credible, and even if we were to reach this argument, we do not review a trial court's credibility determinations on appeal.

"When reviewing a trial court's decision following a bench trial, we ask whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law." *Real Carriage Door Co. v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021). Factual statements "included within conclusions of law will be treated as findings of fact," *Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 903, 792 P.2d 1254 (1990), and unchallenged findings of fact "are verities on appeal." *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

A party challenging factual findings must make "[a] separate assignment of error for each finding" they allege is improper "with reference to the finding by number," and "[t]he appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue." RAP 10.3(g). The Rules of Appellate Procedure "allow[] appellate review in spite of technical violations" if "the nature of the challenge is clear and the challenged findings are set forth in the party's brief." *Smith v. Emp. Sec. Dep't*, 155 Wn. App. 24, 33, 226 P.3d 263 (2010) (citing RAP 1.2(a)).

Vaughn argues that "[t]here is no credible evidence to award damages" based on federal tax penalties because the only evidence supporting the existence of such penalties is Couch's testimony. Appellants' Opening Br. at 16. But because Vaughn fails to establish that Couch's testimony should have been barred by *Frye*, we do not discount it. The trial court found Couch to be credible, and "we do not review the trial court's credibility determinations" on appeal. *Real Carriage Door*, 17 Wn. App. 2d at 457.

Additionally, because Vaughn fails to assign error to any specific finding of fact by the trial court, we treat all factual findings related to this argument as verities. A different section of Vaughn's opening brief states that "[t]he appellants contest all financial findings stemming from Ms. Couch's calculations." Appellants' Opening Br. at 18. But this broad statement of error does

not identify any factual findings with enough specificity to make "the nature of the challenge . . . clear." *Smith*, 155 Wn. App. at 33.

Several of the trial court's unchallenged findings of fact support the conclusion that MAL was entitled to damages for federal tax penalties. For instance, the court found that while Vaughn was running the Edmonds store "there was no transfer of funds from the Edmonds store to Mark LaVergne or MAL; instead, funds were comingled with the Olympia Store," CP at 1555 (FF 26) and that "Vaughn admits that the income from MAL went to his affiliates" CP at 1556 (FF 30). Additionally, the court found that Vaughn's interference with MAL's income "depriv[ed] MAL of possession and the ability to pay obligations such as tax obligations." CP at 1558 (CL 2). While this statement is in the conclusions of law section of the order, it is a factual finding and can be treated as such. The record supports this finding; Couch testified that she worked together with MAL's tax accountant to calculate federal tax penalties and interest.

Further, Vaughn provides no authority to support his argument that damages cannot be awarded to provide recovery for federal tax obligations and penalties incurred because of the defendant's conduct absent tax returns, IRS correspondence, and testimony from a tax expert. We therefore assume that no such authority exists. *See State v. Conway*, 8 Wn. App. 2d 538, 548, 438 P.3d 1235 (2019) ("[I]f a party does not provide a citation to support an asserted proposition, courts may 'assume that counsel, after diligent search, has found [no supporting authority].'" (alterations in original) (internal quotation marks omitted) (quoting *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)). Couch's calculations and testimony form a sufficient evidentiary basis for the court's finding. Because Vaughn fails to show either that the trial court made an error as a matter of law or that its findings related to these tax obligations were not supported by substantial evidence, we affirm the trial court on this issue.

### III. CREDIT FOR PPP LOAN

Vaughn argues that the trial court erred in crediting the funds that ATM Service Pro received from a federal PPP loan to MAL on the basis that under 13 C.F.R. § 120.110[h], marijuana dispensaries are ineligible to receive PPP loans. We disagree that the trial court erred in crediting the funds.

Businesses ineligible for PPP loans include those that are "engaged in any activity that is illegal under Federal, State, or local law." 13 C.F.R. § 120.110[h]. This includes retail marijuana stores, because distributing marijuana is illegal at the federal level. *See* 21 U.S.C. § 841. But the trial court did not rule that MAL's Edmonds dispensary should have received the PPP loan. Rather, it ruled that after the loan was forgiven, Vaughn should have credited MAL with the amount of the loan because it had charged MAL for the labor the loan had been granted to cover. Vaughn cites no authority to suggest that it is improper for a court to order damages in these circumstances, even where the recipient is the owner of a marijuana dispensary. Thus, we assume he found none and affirm the trial court on this issue.

### IV. VOIDABLE TRANSACTION

Vaughn contests the trial court's award of damages against his father, Robert Davenny Jr. First, he argues that the trial court erred in ruling that the $350,000 sent to Davenny was a voidable transfer under RCW 19.40.041. Vaughn contends that judgment must be reversed because the court failed to make a necessary finding that the transfer was made with "actual intent" to defraud MAL. Appellants' Opening Br. at 23. We disagree that the court neglected to make that finding.

"A transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." RCW 19.40.041(1)(a). Here, the trial court did make a finding

of actual intent when it stated, "There is evidence of actual intent to interfere with MAL's profit. The Vaughn Defendants willfully interfered with MAL's property . . . by retaining and appropriating those funds for uses other than for which the money was entrusted, including transfers to affiliates." CP at 1558 (CL 2). Although this finding is in the court's conclusions of law, we treat it as a finding of fact. The statement did not specifically refer to the Davenny transfer. But the court's use of "actual intent" language from RCW 19.40.041(1)(a), coupled with its decision to award a judgment against Davenny, establishes that it found that Vaughn actually intended to interfere with MAL's profits when he transferred money to his father.

Next, Vaughn argues that the order awarding damages against Davenny was also error because the trial court did so based on the theory that the transfer came from the PPP loan funds. Because the trial court also credited the value of the PPP loan to MAL, Vaughn argues, it therefore inappropriately granted MAL a windfall by duplicating recovery. However, this argument ignores that the trial court did not find or conclude that Vaughn used the funds from the PPP loan to repay his father. *See* CP at 1556-57 (FF 38, 39), 1558. There is nothing in the trial court's findings and conclusions that indicates the trial court found the failure to credit the PPP loan to be connected to Vaughn's repayment of the loan from his father.[6]

---

[6] In addition, Vaughn argues for the first time in his reply brief that the damages award for conversion is unsupported by substantial evidence because the trial court "misappli[ed] . . . the contractual framework" and accepted "arbitrary financial adjustments made by Ms. Couch." Appellants' Reply Br. at 22. Because this claim was not raised in Vaughn's opening brief, we decline to address it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

## V. PREJUDGMENT INTEREST

Vaughn next argues that the trial court erred in awarding prejudgment interest because the principal damages were based on Couch's adjusted accounting records and were therefore not liquidated. We disagree.

"We review a trial court's order on prejudgment interest for abuse of discretion." *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 672, 295 P.3d 231 (2013). Prejudgment interest is available "'(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract . . . [and] is determinable by computation with reference to a fixed standard contained in the contract.'" *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 124, 323 P.3d 1036 (2014) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)). A claim is liquidated if "the evidence furnishes data which, if believed, make[s] it possible to compute the amount due with exactness, without reliance on opinion or discretion." *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 685, 15 P.3d 115 (2000). "The fact that an amount is disputed does not render the amount unliquidated." *Forbes v. Am. Bldg. Maint. Co. W.*, 170 Wn.2d 157, 166, 240 P.3d 790 (2010).

The principal judgment involved calculations that could be determined based on fixed standards. The trial court's order identified net income of the store for a particular time period; credit for the PPP loan; tax penalty amounts for specific years; and a specific amount that was fraudulently transferred to Davenny. The amount is not unliquidated merely because Vaughn disputes it. Additionally, it is worth noting that to the extent Couch's calculations were based on estimates and professional judgment rather than concrete figures, it is because Vaughn had intentionally manipulated his records to conceal the fact that he was converting MAL's profits.

13

We decline to allow a party to avoid prejudgment interest simply by concealing their conversion of another's property. The order of prejudgment interest is consistent with "the principle that a party 'who retains money which he ought to pay to another should be charged interest upon it.'" *Forbes*, 170 Wn.2d at 166 (internal quotation marks omitted) (quoting *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986)). The trial court did not abuse its discretion when it awarded prejudgment interest to MAL.

## VI. ATTORNEY FEES

Finally, Vaughn argues that the trial court's award of attorney fees to MAL was error based on an improper interpretation of the indemnification agreement in the Vaughn-MAL contract. We disagree.

"In Washington parties may not recover attorney fees except under a statute, contract, or some well-recognized principle of equity." *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 525, 210 P.3d 318 (2009). "Whether a contract or statute authorizes an award of attorney fees is . . . a question of law reviewed de novo." *Id.* at 517. "Language in a contract will be given its ordinary meaning unless sufficient reason exists to apply another meaning." *Comfort & Fleming Ins. Brokers v. Hoxsey*, 26 Wn. App. 172, 176, 613 P.2d 138 (1980). "If a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations after analyzing the language and considering extrinsic evidence (if appropriate), the provision is ambiguous." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). "We generally construe ambiguities against the contract's drafter." *Id.*

Vaughn cites no legitimate authority to support his argument that the language does not authorize an award of attorney fees. And because Vaughn drafted the general services agreement of which he now complains, we construe any ambiguous language in MAL's favor. The text of the

provision, under which "each [p]arty agree[d] to indemnify" the other "against *any and all* claims, losses, . . . *reasonable legal fees and costs of any kind or amount whatsoever* which result from or arise out of any act or omission of the indemnifying party" refers specifically to legal fees and is broad enough to encompass those that arise out of litigation between the parties. Ex. 3 (emphasis added). Although labelled an indemnification clause, the specific language is not limited to claims made by third parties as is the case in other indemnification clauses. *E.g., MacLean Townhomes, L.L.C. v. Am. 1st Roofing & Builders Inc.*, 133 Wn. App. 828, 831, 138 P.3d 155 (2006) (indemnification agreement language limited recovery to "'any and all claims, demands, losses and liabilities to or by third parties arising from . . . services performed . . . under this Subcontract'" (quoting record). We affirm the trial court's award of attorney fees.

Finally, MAL seeks attorney fees on appeal, relying on the same contractual provision. MAL is the prevailing party on appeal, and the contractual provision broadly encompasses "reasonable legal fees and costs of any kind or amount." Ex. 3. We therefore award attorney fees to MAL on appeal in an amount to be determined by this court's commissioner.

CONCLUSION

We affirm and award attorney fees on appeal to MAL.

No. 59739-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

CHE, J.